IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                              No. 2:21-cr-20003-SHL

KATRINA ROBINSON, KATIE AYERS,
and BROOKE BOUDREAUX,

     Defendants.

---

**MOTION TO DISMISS FOR VINDICTIVE PROSECUTION
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

---

COMES NOW Katrina Robinson, by and through undersigned counsel, and respectfully moves for dismissal of the indictment against Ms. Robinson, as the Government violated Ms. Robinson's due process rights in bringing the current charges in a vindictive prosecution.  The charges in this subsequent indictment were filed by the Government in retaliation against Ms. Robinson for exercising her constitutional rights to seek a jury trial and dismissal of the original charges against her.  Ms. Robinson, through a series of motions, challenged the legal basis for the Government's original charges against her and uncovered multiple legal deficiencies in the original indictment.   Based on these motions, the government corrected its legal errors in a superseding Indictment, dropping 31 of the 48 charges.  Having to publicly admit to charging deficiencies, the Government took steps to punish Ms. Robinson for her legal motions, including the simultaneous filing of a new unrelated charge and the taking of affirmative retaliatory steps to unfairly prejudice Ms. Robinson.  Based upon the timing of the complaint and other factors set

forth below, these new charges were brought vindictively in violation of Ms. Robinson's due process rights, and the Court should dismiss the Indictment against her.

## BACKGROUND

In retaliation for exercising her Constitutional rights to a trial by jury and a proper indictment, the Government has brought a vindictive and frivolous prosecution against Katrina Robinson.

On July 30, 2020, the Government indicted Katrina Robinson, charging her with 24 counts of violating 18 U.S.C. § 666(a)(1)(A) and 24 counts of wire fraud under 18 U.S.C. § 1343 (hereinafter, the "original Indictment"). (*United States v. Robinson*, 20-cr-20148-SHL/tmp (hereinafter *Robinson I*), Indictment, ECF No. 9, Page ID 33-42.) At the time, the Government publicized its charging decision, including highlighting the extensive number of charges.[1] The Government's press release noted that the U.S. Attorney personally announced the indictment, including a quotation from him about the importance of this type of prosecution. (*Id.*)

In December 2020, Ms. Robinson, exercising her due process rights, filed various motions to dismiss counts from the original Indictment. First, Ms. Robinson moved to dismiss the counts under 18 U.S.C. § 666(a)(1)(A), citing binding precedent showing that the Government had mischarged Ms. Robinson. (*Robinson I*, Motion to Dismiss Counts 1-24 and Memorandum of Law in Support, ECF No. 41.) In its response, the Government reluctantly admitted that it had mischarged Ms. Robinson: "Many of the counts in the [original Indictment], in charging conduct which encompass [sic] more than a one-year period and in charging multiple counts alleging conduct occurring in the same year, are not in compliance with the [*United States v.*] *Valentine*[,

---

[1] The United States Attorney's Office, Western District of Tennessee, *Federal Grand Jury Returns Indictment Charging Tennessee State Senator Katrina Robinson for Theft and Embezzlement Involving Government Programs and Wire Fraud* (July 30, 2020), https://www.justice.gov/usao-wdtn/pr/federal-grand-jury-returns-indictment-charging-tennessee-state-senator-katrina-robinson.

63 F.3d 459, 464 (6th Cir. 1995)] holding." (*Robinson I*, Resp. of the United States to Defendant's Motion to Dismiss Counts 1-24, ECF No. 52, PageID 154.)   In so writing, the Government admitted that it over-charged Ms. Robinson in the original Indictment by 20 counts under 18 U.S.C. § 666(a)(1)(A) in clear contravention of applicable Sixth Circuit precedent.

At the same time, Ms. Robinson also moved to dismiss the wire fraud counts.  (*Robinson I*, Motion to Dismiss Counts 25-48 of the Indictment and Memorandum of Law in Support, ECF No. 44.)  In its response, the Government admitted that "[i]t is unnecessary to charge the defendant with scores of substantive counts arising from this same basic scheme," yet that is exactly what the Government had done in the original Indictment, charging Ms. Robinson with 24 counts of wire fraud under 18 U.S.C. § 1343.  As discussed below in more detail, the Government dismissed 11 wire fraud charges in the Superseding Indictment. (*Robinson I*, Supersedin, ECF No. 64.)

The parties were never in negotiations for a settlement and at no time did the government advise her current lawyers that Ms. Robinson was under investigation for an alleged fourteen-thousand-dollar wire fraud that occurred in 2017.  In fact, on January 14, 2021, the Government's attorney emailed Ms. Robinson's counsel for the first time regarding potential negotiations:  "I remain open to the idea which you broached previously of meeting on a more informal basis to discuss the proof with an eye toward possibly reaching a resolution."  (*See*, attached as **Exhibit 1**, January 14, 2021 Email from Chris Cotten to Larry Laurenzi.)  The next day, Robinson's counsel, emailed the Government's attorney back agreeing that such a meeting could be fruitful:

> I do think it would be beneficial for us to meet to discuss this case.  I propose our finding sometime next week.  We can meet at your office or we can use a conference room over here.  We do have a conference room with plexiglass dividers that can accommodate several people.  I will call you on Monday and see if we can agree on a time and place.

(See, attached as **Exhibit 2**, January 15, 2021 Email from Larry Laurenzi to Chris Cotten.)

Approximately an hour after the parties had agreed to arrange a meeting, the Government filed a Motion to Seal Superseding Indictment, but mistakenly failed to file its motion under seal.[2] (*Robinson I*, Motion to Seal Superseding Indictment, ECF No. 62, PageID 221.)  In the Motion, the Government noted the "considerable amount of media coverage" surrounding the case. (*Robinson I*, Motion to Seal Superseding Indictment, ECF No. 62, PageID 221.)  The Motion likewise tied together the filing of the superseding Indictment with the filing of the criminal complaint.

> Contemporaneously with the instant superseding indictment, the government is filing a criminal complaint in a new case charging the defendant and two other co-defendants; and the government desires to execute the arrest warrants for both cases at the same time. . . .  The United States therefore requests that the superseding [sic] be filed under seal so as not to prematurely reveal the existence of the charges to the defendant . . . .

(*Id.*)  As seen from the Government's own Motion, the Government intended to keep these new charges secret from Ms. Robinson and her counsel and to arrest her on both charges well knowing that Ms. Robinson was represented by counsel and would easily have arranged for her to turn herself into the Marshal's Service.

While Ms. Robinson presented neither a flight risk nor danger to the community, the government was making detailed plans to arrest Ms. Robinson in Nashville on Tuesday, January 19, 2021, the day after Martin Luther King Jr.'s holiday while she was in town performing her legislative duties as a Tennessee State Senator.   Such an arrest clearly would have created a media spectacle and would have further punished her in the eyes of the public.  To avoid a spectacle in Nashville on the State Capitol steps, once Ms. Robinson's counsel was mistakenly made aware of the new charges, Ms. Robinson's counsel immediately coordinated with United States Marshals

---

[2] While the filed motion has January 14, 2021 on its face, the ECF notification shows that it was filed on January 15, 2021 at approximately 2:20 p.m. (*See*, attached as **Exhibit 3**, ECF Notification Email dated January 15, 2021.)

to have Ms. Robinson turn herself in on January 19, 2021, in Memphis, Tennessee. But for Ms. Robinson's counsel mistakenly receiving notice of the new charges, Ms. Robinson would have been subject to unwarranted and prejudicial actions by the Government.

After discovering the Government's plan, Ms. Robinson's counsel called the Government's attorney. The Government's attorney did not explain why the Government failed to alert Ms. Robinson's counsel of the new charges and potential for arrest. Furthermore, the Government's attorney stated that Ms. Robinson and her counsel should have known these charges were coming based on a discussion the Government had with Ms. Robinson's prior counsel that if Ms. Robinson did not plead guilty, then the government would file the additional charge.

In the Superseding Indictment, the Government was forced to drop twenty of the 18 U.S.C. § 666(a)(1)(A) counts, leaving only four counts. (*Robinson I*, Superseding Indictment, ECF No. 64, PageID 228-236.) The Government also dropped eleven of the wire fraud counts, leaving only thirteen counts of wire fraud (*Id.* at PageID 236-237.)

At the exact same time as the Government was being forced to supersede its original Indictment and drop thirty-one counts in *Robinson I*, the Government brought the charges in the current case, not by Indictment, but by a complaint. Even though the government was aware of these facts for more than a year and there were no exigent circumstances, the government charged Ms. Robinson by a detailed criminal complaint. Sidestepping the federal grand jury allowed the government to try the case in the press and to further cause public harm to Ms. Robinson. There was no legal or factual reason to use a complaint—but for the ability to publish evidence to the public that damaged Ms. Robinson. The complaint went from a charging instrument to a concerted effort to publicly punish her for refusing to plead guilty and for filing her motions to dismiss. (*United States v. Katrina Robinson, Katie Ayers, Brooke Boudreaux* (hereinafter *Robinson II*),

5

Criminal Complaint, ECF No. 1.)  Releasing evidence favorable to the Government's version of the facts to the public effectively blunted Ms. Robinson from responding in support of her innocence.

The Complaint was written for the headlines, and the Government took advantage of publicizing its version of the facts.[3]  In its press release on the new charges, the Government cited to its original press release on *Robinson I*, but the Government failed to update the press release or include any discussion of the fact that it had mischarged Ms. Robinson initially.[4]  Instead, the original press release, which the Government encouraged readers and press members to rely upon, still states that Ms. Robinson has been charged with 24 counts of theft and embezzlement and 24 counts of wire fraud.[5]

The selective details in the Criminal Complaint had the intended effect.  Bill Dries for Daily Memphian wrote specifically about the text messages in the Criminal Complaint.[6]  WMC Action News 5 reported on the new charges as well, including writing about the "48 counts" in *Robinson I* even though the Government had been forced to dismiss many of those counts by that time.[7]  Meanwhile, it appears that Local ABC 24 merely re-printed the Government's press release

---

[3] The United States Attorney's Office, Western District of Tennessee, *New Charges Filed Against Tennessee State Senator Katrina Robinson, Two Others in Fraud and Money Laundering Case* (January 19, 2021), https://www.justice.gov/usao-wdtn/pr/new-charges-filed-against-tennessee-state-senator-katrina-robinson-two-others-fraud-and.

[4] *Id.*

[5] The United States Attorney's Office, Western District of Tennessee, *Federal Grand Jury Returns Indictment Charging Tennessee State Senator Katrina Robinson for Theft and Embezzlement Involving Government Programs and Wire Fraud* (July 30, 2020), https://www.justice.gov/usao-wdtn/pr/federal-grand-jury-returns-indictment-charging-tennessee-state-senator-katrina-robinson.

[6] Bill Dries, Daily Memphian, *State Senator Charged in New Federal Fraud Complaint* January 19, 2021, https://dailymemphian.com/article/19409/katrina-robinson-healthcare-institute-fbi-new-complaint.

[7] Shyra Sherfield, WMC Action News 5, *New Federal Charges Filed Against Tennessee State Sen. Katrina Robinson* (Jan. 19, 2021), https://www.wmcactionnews5.com/2021/01/19/new-charges-filed-against-tennessee-state-sen-katrina-robinson/.

and included a copy of the Complaint with the text messages on their website.[8]  Memphis Flyer reported on it and also included details about the "48-count indictment" in *Robinson I*.[9]  The Commercial Appeal also covered the news, again referencing the "48 counts of fraud" in *Robinson I*.[10]

Immediately following the media storm, the government quickly took the case to the grand jury and obtained an indictment.  Of course, in the actual Indictment, the Government did not include the text messages, as they had in the Criminal Complaint.  (*Robinson II*, Indictment, ECF No. 30.)  The Indictment was void of the detailed evidence cited in the Complaint.  The Indictment set forth only what was required to be pled under the Federal Rules of Criminal Procedure.

The Government's vindictiveness in bringing the second charge is further evidenced by the fact that the government, in bringing this second prosecution, ignored its own internal guidelines.  The amount alleged in the fraud fails to come close to any of the monetary thresholds set forth in their guidelines.  While these guidelines do not create any individual rights, it further reveals the Government's true intent in bringing the new charge.   The charges in the current matter only involve $14,70.00,[11]  (*Robinson II*, Criminal Complaint, ECF No. 1 at ¶ 9), an amount well below the threshold set forth in their guidelines.  Additionally, there was no complaining witness or victim that alerted the Government to this alleged scheme.   (*See id.*)

---

[8] U.S. Department of Justice News Release, Local ABC 24, *Tennessee State Sen. Katrina Robinson, Two Others, Face New Federal Charges* (Jan. 19, 2021), https://www.localmemphis.com/article/news/crime/tennessee-state-senator-katrina-robinson-two-others-face-new-federal-charges/522-c464a45b-00c1-4f5d-be4e-1ca8f4a5da16.

[9] Toby Sells, Memphis Flyer News Blog, *New Charges Issued for State Sen. Katrina Robinson* (Jan. 19, 2021), https://www.memphisflyer.com/NewsBlog/archives/2021/01/19/new-charges-issued-for-state-sen-katrina-robinson.

[10] Micaela A. Watts, Memphis Commercial Appeal, *Additional Fraud Charges Filed Against Tennessee State Sen. Katrina Robinson* (January 19, 2021), https://www.commercialappeal.com/story/news/2021/01/19/new-federal-charges-against-tennessee-state-senator-katrina-robinson/4219605001/.

[11] At most, according to the Criminal Complaint, THI received $4,388 since THI refunded $10,082 of the original $14,470.

## LAW AND ARGUMENT

"To punish a person because [she] has done what the law plainly allows [her] to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on [her] legal rights is 'patently unconstitutional.'" *Bordenkircher v. Hayes*, 434 U.S. 357, (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 32-33 n.20 (1973)). In the Sixth Circuit, it is well-established that "prosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pre-trial assertions of protected rights." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (citing *United States v. Andrews*, 633 F.2d 449, 453-56 (6th Cir. 1980) (en banc)).

There are two ways to establish a vindictive prosecution claim. "First, a defendant may demonstrate 'actual vindictiveness,' *i.e.*, he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). "Second, a defendant may establish that, in the particular factual scenario presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's actions." *Id.* To show a "realistic likelihood of vindictiveness," the defendant "must establish that (1) the prosecutor has some stake in deterring the petitioner's exercise of [her] rights and (2) the prosecutor's conduct was somehow unreasonable." *Id.* at 482 (internal quotations omitted).

Here, Ms. Robinson can make both showings. The Government's attorney explicitly stated that this current prosecution is vindictive because Ms. Robinson refused to agree to a plea deal in *Robinson I* even though negotiations were just beginning. Second, even if the Court finds that such conduct does not show actual vindictiveness, there is a reasonable likelihood of vindictiveness based on the Government's actions in this matter. As the Government has acted

8

vindictively or with a reasonable likelihood of vindictiveness, the Court should dismiss the charges against Ms. Robinson in this matter. *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) ("[A] defendant may obtain a dismissal of an indictment on grounds of prosecutorial vindictiveness by showing 'actual vindictiveness.'").

**I.      The Government's Actions in This Case Are Actually Vindictive.**

The Government has been actually vindictive by bringing the current charges against Ms. Robinson, and the Court should, therefore, dismiss the Indictment against Ms. Robinson. In *Bordenkircher v. Hayes*, the Court addressed a similar situation. 434 U.S. 357. As in *Bordenkircher*, here, "a vindictive motive need not be inferred. The prosecutor has admitted it." *Id.* at 361, n.7 (quotations omitted). Here, the Government's attorney admitted that the Government brought these charges because Ms. Robinson would not plead guilty in *Robinson I*.

In *Bordenkircher*, the attorney for the Commonwealth of Kentucky, in a meeting with the Clerk of Court and the defendant to discuss a possible plea agreement, threatened to bring an additional indictment under the Kentucky Habitual Criminal Act if the defendant refused to plead guilty to the original charge of uttering a forged instrument. 434 U.S. at 358. After the defendant refused to plead guilty, the Commonwealth indicted him under the Kentucky Habitual Criminal Act. *Id.* Ultimately, the Court found that there was no due process violation, reasoning that, "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id.* at 364. The Court, however, limited its decision to the specific "course of conduct engaged in by the prosecutor." *Id.* at 365. The Sixth Circuit has ruled similarly: "[I]f the charges are brought simply as the result of the

failure of the plea bargaining process, they are not vindictive." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001).

Here, however, the facts are distinguishable and show that the Government acted with actual vindictiveness. First, there has been no "failure of the plea bargaining process" in this matter. The Government has never approached Ms. Robinson's current counsel with any plea negotiation nor the threat of additional charges. Furthermore, even as the Government was in the process of bringing new charges against Ms. Robinson, the Government's attorney reached out to her counsel to setup a time to discuss negotiations: "I remain open to the idea which you broached previously of meeting on a more informal basis to discuss the proof with an eye toward possibly reaching a resolution." (**Exhibit 1**.) Thus, the Government cannot reasonably argue that plea negotiations had failed in *Robinson I*.

The Sixth Circuit dealt with a similar issue in *United States v. LaDeau*. 734 F.3d 561 (6th Cir. 2013). In *LaDeau*, the Government charged the defendant with possession of child pornography, but, after the defendant won on a motion to suppress, the government changed its theory, superseded the indictment, and charged the defendant with conspiracy based on a receipt of child pornography theory, a theory which exposed the defendant to a higher sentence. *Id.* at 564. The Court found that "the increased charge here did not stem from the plea bargaining process. Instead, the government unilaterally imposed the more severe charge without engaging LaDeau in any of the give-and-take compromise through which LaDeau could negotiate a concession or benefit." *Id.* at 569 (quotations and brackets omitted). The same is true here. There were no plea discussions with current counsel for Ms. Robinson, and the parties were still in the process of trying to setup those discussions, so the increased charges could not have been based

10

on the failure of plea negotiations.  Instead, the Government unilaterally brought additional charges because Ms. Robinson asserted her right to a jury trial in *Robinson I*.[12]

As such, we are left with a vindictive motive, and no off-setting consideration, such as the failure of plea negotiations, that makes such a prosecution constitutionally permissible.  Because the charges in this matter are based on actual vindictiveness by the Government, the Court should dismiss the charges in this matter against Ms. Robinson.  *LaDeau*, 734 F.3d at 566 ("[A] defendant may obtain a dismissal of an indictment on grounds of prosecutorial vindictiveness by showing 'actual vindictiveness.'").

## II.    Alternatively, the Government's Actions in This Matter Show a Realistic Likelihood of Vindictive Prosecution

Even if the Court finds that the Government has not acted with actual vindictiveness, the Government's actions, at the very least, show that there is a realistic likelihood of vindictive prosecution in this matter.  To show a realistic likelihood of vindictive prosecution, first, a defendant must show that the Government had a stake in deterring the defendant from asserting her rights. *Bragan*, 249 F.3d at 482.  Next, a defendant must show that the prosecutor's conduct was unreasonable.  *Id.*   Here, as previously discussed, the Government had a "stake" in discouraging Ms. Robinson from asserting her right to a jury trial.  Additionally, the Government had a stake in discouraging Ms. Robinson from further attacking the defective indictment in *Robinson I*.  The Government, furthermore, has acted unreasonably in this matter.

---

[12] Additionally, as will be discussed in more detail below, the Government's decision to bring the current charges also appears to be based on the fact that Ms. Robinson asserted her rights by challenging the defective indictment and forcing the Government to supersede the indictment in *Robinson I*, another improper reason for bringing additional charges against Ms. Robinson.

**A. The Government Had a Stake in Deterring Ms. Robinson from Asserting Her Rights.**

The unique facts and circumstances of this case show that the Government had a stake in deterring Ms. Robinson from asserting her rights.  "Although *Goodwin* [*v. United States*, 457 U.S. 368 (1982)] generally counsels against a finding that a sufficient prosecutorial stake has arisen in the pre-trial context, it has certainly not eliminated the possibility that a district court might conclude exactly that.  Instead, '[e]ach situation will necessarily turn on its own facts.'" *LaDeau*, 734 F.3d 561, 567 (6th Cir. 2013).  Here, the Government had two different stakes or reasons for wanting to deter Ms. Robinson from asserting her rights.

First, and as previously discussed in Section I, the Government had a stake in preventing Ms. Robinson from asserting her right to a trial by jury.  The Government' attorney admitted as much when he said that he brought these charges because Ms. Robinson did not plead guilty in *Robinson I*.

Next, the Government also had a stake in preventing Ms. Robinson from attacking the defective indictment in *Robinson I*.  A defendant "exercising her right to challenge the sufficiency of the indictment against her through a motion to dismiss . . . is a protected right."  *United States v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008).  Although the Sixth Circuit has typically found that a sufficient stake does not exist when dealing with routine pre-trial motions attacking the sufficiency of an indictment, *see id.*; *see also United States v. Branham*, 97 F.3d 835, 850 (6th Cir. 1996), this case is unique due to the high-profile nature of Ms. Robinson and her prosecution.

The Government had a unique stake in not losing public confidence when it was forced to drop many counts against Ms. Robinson and seek a superseding indictment in *Robinson I*.  The objective evidence in the record shows that, from the beginning of its prosecution against Ms. Robinson, the Government has been focused on public relations.  When the Government brought

charges against Ms. Robinson, the Government highlighted the numerous counts against Ms. Robinson in a press release.[13]  The U.S. Attorney for the Western District at the time, personally announced the indictment against Ms. Robinson.[14]  The Government also explicitly mentioned that Ms. Robinson is a Tennessee State Senator who was elected to represent the 33rd District in Shelby County in 2018.[15]  This was so even though none of the charges are connected to her elected office.

In December of 2020, Ms. Robinson filed motions to dismiss all the counts in the original Indictment in *Robinson I*.   In response, the Government was forced to supersede the original Indictment and drop 31 of the original 48 charges against Ms. Robinson.  Had the Government simply stopped there, there would be no issue, but, instead, the Government decided to bring new charges in this matter in a vindictive prosecution designed to avoid any loss in public confidence. In its Motion to Seal Superseding Indictment, the Government acknowledged that its original "charges generated a considerable amount of media coverage because of the defendant's status as sitting State Senator." (*Robinson I*, Motion to Seal Superseding Indictment, ECF No. 62, PageID 221.)  The Government also showed that it had a "sufficient stake" in deterring Ms. Robinson from attacking the sufficiency of the original Indictment in *Robinson I* by tying the new charges to the fact that it was having to supersede the original Indictment:

> Contemporaneously with the instant superseding indictment, the government is filing a criminal complaint in a new case charging the defendant and two other co-defendants; and the government desires to execute the arrest warrants for both cases at the same time.

---

[13] The United States Attorney's Office, Western District of Tennessee, *Federal Grand Jury Returns Indictment Charging Tennessee State Senator Katrina Robinson for Theft and Embezzlement Involving Government Programs and Wire Fraud* (July 30, 2020), https://www.justice.gov/usao-wdtn/pr/federal-grand-jury-returns-indictment-charging-tennessee-state-senator-katrina-robinson.
[14] *Id.*
[15] *Id.*

(*Id.*) By its own actions in tying the two prosecutions together at this precise time when it was being forced to correct a defective indictment in the prosecution of *Robinson I*, the Government has shown that it had a sufficient stake in deterring Ms. Robinson from exercising her right to challenge the sufficiency of the Indictment, even if the Government should not or would not normally have a sufficient stake following routine pre-trial motions.

The Government's press release after the new charges further bolsters the stake that the Government had in not losing public confidence in its prosecution of a high-profile defendant, such as Ms. Robinson.  Rather than acknowledging or responding to the fact that it had just been forced to dismiss 31 or the 48 original counts against Ms. Robinson, the Government merely discussed the new charges in this matter.[16]  In fact, in the press release discussing the new charges, the Government referenced the original Indictment by including a link to the original press release, which was no longer accurate since the Government had been forced to drop 31 of the 48 counts discussed in the original press release.[17]  As such, under the unique facts in this matter, the Government had a sufficient stake in deterring Ms. Robinson's exercise of her rights to both stand trial before a jury and to attack her original Indictment based on its sufficiency.

### B.  The Government's Actions Have Been Unreasonable

In addition to having a sufficient stake in deterring Ms. Robinson from exercising her Constitutional rights, the Government has also acted unreasonably in this matter.  In addition to the timing and the fact that the Government tied the two prosecutions together, *see supra*

---

[16] The United States Attorney's Office, Western District of Tennessee, *New Charges Filed Against Tennessee State Senator Katrina Robinson, Two Others in Fraud and Money Laundering Case* (January 19, 2021), https://www.justice.gov/usao-wdtn/pr/new-charges-filed-against-tennessee-state-senator-katrina-robinson-two-others-fraud-and.

[17] *Id.*; *see also* The United States Attorney's Office, Western District of Tennessee, *Federal Grand Jury Returns Indictment Charging Tennessee State Senator Katrina Robinson for Theft and Embezzlement Involving Government Programs and Wire Fraud* (July 30, 2020), https://www.justice.gov/usao-wdtn/pr/federal-grand-jury-returns-indictment-charging-tennessee-state-senator-katrina-robinson.

Section II.A, the Government's entire course of action has been unreasonable in this matter, showing a preference for winning the public relations battle rather than the legal battle.  First, the Government, in clear contravention of established Sixth Circuit law, inflated the number of counts against Ms. Robinson in the original Indictment.[18]   The Government admitted as much in his response to Ms. Robinson's Motion to Dismiss Counts 1-24: "Many of the counts in the [original Indictment], in charging conduct which encompass [sic] more than a one-year period and in charging multiple counts alleging conduct occurring in the same year, are not in compliance with the [*United States v.*] *Valentine*[, 63 F.3d 459, 464 (6th Cir. 1995)] holding."  (*Robinson I*, Resp. of the United States to Defendant's Motion to Dismiss Counts 1-24, ECF No. 52, PageID 154.). As previously discussed, in what the Government knew was a high-profile prosecution, it highlighted the vast number of counts in the press.[19]

When pushed on its clear contravention of Sixth Circuit law, the Government, rather than simply correcting its defective indictment, also brought these new charges in response. Meanwhile, at the same time, the Government was still reaching out to Ms. Robinson's counsel to have plea discussions for the first time on the case.  The Government's decision not to tell Ms. Robinson's counsel about the superseding indictment and the new charges further evidences unreasonable conduct in these matters and that the Government was motivated by the press battle rather than the legal realities in this case.

There is no doubt that Ms.  Robinson's arrest in Nashville would have been a media spectacle.  In the Motion to Seal Superseding Indictment, the Government admitted that it intended

---

[18] Normally, this would not be a particularly egregious error, but there are only 32 reported cases dealing with 18 U.S.C. § 666 in the Sixth Circuit.  Many of those deal only with the bribery portion of the statute, so this is a very small body of law.

[19] The United States Attorney's Office, Western District of Tennessee, *Federal Grand Jury Returns Indictment Charging Tennessee State Senator Katrina Robinson for Theft and Embezzlement Involving Government Programs and Wire Fraud* (July 30, 2020),  https://www.justice.gov/usao-wdtn/pr/federal-grand-jury-returns-indictment-charging-tennessee-state-senator-katrina-robinson.

to keep the new charges secret from Ms. Robinson and her counsel until she was arrested. (*Robinson I*, Motion to Seal Superseding Indictment, ECF No. 62, PageID 221.)  The Government made this decision even though Ms. Robinson has not been detained pre-trial in *Robinson I*, and there is absolutely no reason to believe that she is a flight risk or a risk to the safety of others.

Finally, the government's use of a Complaint with its one-sided lurid details further proves the government's motive of retaliation.  While grand juries were available as evidenced by the superseding indictment, the Government used a criminal complaint to publish favorable evidence that was not included in the subsequent indictment.  The use of a complaint, as opposed to an indictment, was an effort to weaponize a charging instrument into a means to seek retribution against Ms. Robinson, and it evidences the Government's effort to retaliate against Ms. Robinson by prejudicing her in publications to the media.  Limits are placed on a prosecutor's use of extrajudicial statements that can be disseminated to the public.  A criminal complaint should not be used as a vehicle to circumvent this rule in an attempt to win over public opinion or to hide mistakes made by the government.  It is this unfettered use of a complaint, when a complaint is not needed, that further supports a finding of unreasonableness on the part of the government.  The complaint was nothing more than "weapon" used to damage Ms. Robinson.

As Ms. Robinson has shown a realistic probability of vindictiveness, she respectfully requests that the Court dismiss the Indictment against her in this matter.

<u>CONCLUSION</u>

The Government admitted that it acted with actual vindictiveness in this matter.  Unlike previous cases where failed plea negotiations would excuse the Government's vindictiveness, plea negotiations had not failed in this matter.  In fact, the Government's attorney emailed Ms. Robinson's counsel about meeting to discuss plea negotiations at the exact same time that he was

planning on filing the new charges against Ms. Robinson.  On this basis alone, the Court should

dismiss the Indictment against Ms. Robinson.  Alternatively, at the very least, the Government has

acted in way that shows a realistic probability of vindictiveness based on their unreasonable

conduct in this high-profile case.  Thus, Ms. Robinson respectfully requests that the Court dismiss

the Indictment against her.

Respectfully submitted,

s/Lawrence J. Laurenzi
Lawrence J. Laurenzi (9529)
L. Mathew Jehl (038251)
BURCH, PORTER & JOHNSON PLLC
130 North Court Avenue
Memphis, TN 38103
Tel: (901) 524-5000
Fax: (901) 524-5024
llaurenzi@bpjlaw.com
mjehl@bpjlaw.com

*Attorneys for Katrina Robinson*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2021, I electronically filed the foregoing with the Clerk
of Court using the CM/ECF system, which will operate to provide notice of this filing to all counsel
of record in this case.

s/Lawrence J. Laurenzi
Lawrence J. Laurenzi

17