IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Crim. No. 2:21-cr-20003-SHL |
| KATRINA ROBINSON, *et al*, | * | |
| Defendants. | * | |
| | * | |

**RESPONSE OF THE UNITED STATES
TO DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION**

COMES NOW the United States of America, by and through Joseph C. Murphy, Jr., Acting United States Attorney, and Christopher E. Cotten, Assistant United States Attorney for the Western District of Tennessee, and responds as follows to defendant Katrina Robinson's Motion to Dismiss for Vindictive Prosecution (RE-67):

**STATEMENT OF FACTS**

The defendant was first charged in Case No. 2:20-cr-20148 (hereinafter *Robinson* 1) in a criminal complaint filed on July 24, 2020. (RE-3, Case No. 20-20148: Complaint). An indictment followed on July 30, 2020. (RE-9, Case No. 20-20148: Indictment). This procedure, perhaps anomalous for a case of its kind under normal circumstances, was in direct response to an order entered by the Court in response to the COVID-19 pandemic.

On July 17, 2020, the Court entered Administrative Order 2020-30 (copy attached as Exhibit A hereto). Recognizing the difficulties in maintaining operations in the conditions brought

on by the pandemic, the order suspended the empanelment of new grand juries through August 28, 2020, and suspended all other grand jury proceedings through August 28, 2020, "except in cases where the statute of limitations will run and cases where an indictment is necessary to comply with the 30-day time limit under 18 U.S.C. §3161." *Id.* The 30-day time limit to which the order refers is the deadline for filing an indictment following the defendant's arrest or service with a summons on the same charges. 18 U.S.C. § 3161(b). Thus, the gravamen of the order was that the government could not bring an indictment in *Robinson 1* without first filing a complaint.

As for the charges in the instant case (hereinafter *Robinson 2*), they could not have been brought at the same time because the investigation was not yet complete. Investigators had been hampered by the ongoing COVID-19 pandemic in locating and interviewing essential witnesses.

Moreover, the charges in *Robinson 2* could never have been part of the original indictment in *Robinson 1* because they allege a completely different scheme to defraud and involve co-conspirators with no involvement in *Robinson 1*. Whereas *Robinson 1* alleges a scheme in which the defendant stole funds from her company The Healthcare Institute (THI) while it was the recipient of federal grant money, *Robinson 2* alleges that the defendant and her co-conspirators defrauded a single victim with misrepresentations that one of them would attend THI as a student and then split the tuition money he provided among themselves.

The original indictment in *Robinson 1* consisted of 48 counts: 24 counts of theft/embezzlement involving government programs in violation of 18 U.S.C. § 666 and 24 counts of wire fraud in violation of 18 U.S.C. § 1343. (RE-9, Case No. 20-20148: Indictment).

On December 4, 2020, the defendant filed a motion to dismiss Counts 1-24 of the original indictment in *Robinson 1* because of the way the counts charging violations of 18 U.S.C. § 666 were grouped. (RE-41, Case No. 20-20148: Motion to Dismiss). In its response, filed January 8,

2021, the government acknowledged that some of the defendant's arguments were correct to the extent that the financial transactions charged in the original indictment should have been grouped by year instead of by payee, resulting in a small number of counts; but noted that any flaws in the original indictment were easily corrected by a superseding indictment, which it signaled its intention to seek. (RE-52, Case no 20-20148: Response in Opposition).

The necessity of superseding the indictment in the original case provided an opportune time to present the additional charges in *Robinson 2* to the grand jury, as the government had always intended to do once the investigation of those charges was complete. There was good reason to believe that this could be accomplished, as the Court's Administrative Order No. 2020-42, entered November 20, 2020 (copy attached as Exbibit B), had greatly expanded the categories of cases that could be presented to a grand jury to include, among other things, "any other matter which, based upon the determination and discretion of the United States Attorney for the Western District of Tennessee, is urgent and necessary to protect the public safety or to advance the mission and priorities of the Department of Justice." *Id.* at p.4.

However, on December 30, 2020, the Court entered Administrative Order No. 2020-45 (copy attached as Exhibit C), which, in response to the then-recent holiday surge of COVID cases in the district, restored the previous grand jury restrictions limiting the presentation of new cases to those with statute of limitations issues and those for which the 30-day time limit of 18 U.S.C. § 3161(b) was about to run. *Id.* The superseding indictment in *Robinson 1* fell into this exception because the government would have faced problems with the statute of limitations if the original indictment were dismissed before it could be superseded, since the earliest charged conduct dated back to 2015. *Robinson 2*, however, did not.

Thus, on Thursday, January 14, 2021, the government obtained a sealed superseding indictment in *Robinson 1* (RE-64, Case No. 20-20148) and filed a sealed complaint in *Robinson 2* (RE-1, Case No. 21-20003).[1] As the government's motion to seal the indictment explained, the government wished to execute the warrants on all of the charges at the same time. (Exhibit D).[2] Because of the media attention the original charges had generated, it was desirable to file the documents under seal so as not to prematurely alert either the defendants or the public to the new charges so that all of the defendants could be brought before the Court safely and without incident. *Id.* Executing the warrants on the two sets of charges together was also intended to minimize the number of arrests and court appearances required to bring all of the defendants before the Court on both cases.

Contrary to the defendant's completely unsupported allegations, the intent was not to create a media spectacle with the arrests; it was precisely the opposite. Having any or all of the three

---

[1] The defendant's assertion that the complaint was "written for the headlines" because it contained more detailed information than the eventual indictment ignores the distinction in form and function between the two. In a complaint, the application and affidavit must show probable cause on their face to enable the magistrate judge to make a probable cause finding from the four corners of the documents and issue an arrest warrant. *See,* Fed. R. Crim. P. 3 (defining and describing a criminal complaint) and Fed. R. Crim. P. 4 (a) (governing the issuance of an arrest warrant on a criminal complaint). By contrast, an indictment is presented to a grand jury, which hears live testimony and makes its probable cause finding based on that. *See,* Fed. R. Crim.P. 6 (governing grand jury proceedings). The indictment itself need only contain the elements of the offense and be sufficiently detailed for the defendant to mount a defense and plead double jeopardy. *United States v. Maruyasu Indus. Co.*, 2017 U.S. Dist. LEXIS 7580 (S.D. Ohio Jan. 19, 2017).

Thus, the complaint in this case was more detailed than the indictment, laying out the case in narrative form, because that is what was required. Unlike the indictment, which need only allege the charged conspiracy, it was necessary for the complaint affidavit to describe the nature of the conspiracy. Accordingly, the text message communications among the co-conspirators, which go to the essence of the criminal conspiracy, were set forth in the complaint but not the indictment.

[2] The sealing motion was originally filed in the docket of *Robinson 1* at RE-62 but has since been removed. An unfiled copy of the motion is attached as Exhibit 4 hereto.

defendants learn about the charges in the media would have created undue complications in executing the arrest warrants and increased the likelihood of public and/or media presence at the arrests, which would have posed potential safety concerns for all involved. Further – again, contrary to the defendant's speculative allegations – it was never the government's intent to affect her arrest in Nashville at the Capital during the legislative session. In addition to the other concerns already mentioned, this would have necessitated the extra and completely unnecessary step of holding an identity and removal hearing in the Middle District of Tennessee before the defendant could be brought to the Western District of Tennessee for initial appearance and arraignment. *See,* Fed. R. Crim. P. 5(c)(3)(outlining procedure when the defendant is arrested outside the prosecuting district and requiring magistrate judge to make identity finding). Rather, the operational plan called for the arrest to take place before the defendant departed Memphis for Nashville.

Nonetheless, as the defendant notes, she learned of the new charges when the sealing motion was inadvertently filed without seal by court personnel. Fortunately, the error was corrected before word of the new charges reached the media; Ms. Robinson arranged to self-surrender[3]; and the other two defendants were arrested without incident.

An indictment in *Robinson 2* followed on January 28, 2020. (RE-29: Indictment)[4].

---

[3] The defendant's suggestion that she should have been allowed to do so as a matter of course because she was represented by counsel ignores the fact that she had two co-defendants in this case who were not. And because, as the complaint sets forth, the three defendants knew one another, it could not be safely assumed that she would not alert her co-defendants, which could have resulted in flight to avoid prosecution. Moreover, the accidental public filing notwithstanding, it would have violated the sealing orders to contact defendant's counsel regarding the new charges while they were under seal.

[4] The indictment alleges conspiracy to commit wire fraud totaling $14,070 and conspiracy to commit money laundering totaling $10,080. *Id.* The defendant, without citing any sources, avers that "the amount alleged in the fraud fails to come close to any of the monetary thresholds set forth in [the government's] guidelines." (RE-67 at p.7, PageID 135). The defendant fails to provide any more detail as to what guidelines she is referencing.

## **ARGUMENT**

The defendant argues that the indictment should be dismissed because it was obtained in an act of vindictive prosecution. However, because; 1) the charging of this case was not vindictive under the objective test for vindictive prosecution in the Sixth Circuit, and 2) was not the result of actual vindictiveness, her motion should be denied.

### A. Vindictive Prosecution Generally

"A showing of vindictive prosecution requires (1) an exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; and (4) the intent to punish the defendant for the exercise of the protected right." *United States v. Young*, 847 F.3d 328, 361 (6th Cir. 2017) (quoting *United States v. Meda*, 812 F.3d 502, 510 (6th Cir. 2015)); s*ee also United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (same).[5]

---

The existence or content of any internal prosecution guidelines is completely irrelevant to the Court's vindictiveness analysis; however, it should be noted that, upon information and belief, the U.S. Attorney's Office for the Western District of Tennessee is unaware of the existence of any such guidelines concerning monetary loss prosecution thresholds in wire fraud or money laundering cases.

[5] This test, first set forth in *Suarez* and most recently in *Young,* appears to constitute both the majority rule and the most recent trend in the Sixth Circuit, so the government adheres to it in this Response. In *Bragan v. Poindexter*, 249 F.3d 476, 481-82 (6th Cir. 2001), which the defendant cites, the Court took a slightly different course. There, it stated that:

> A defendant may establish prosecutorial vindictiveness through one of two approaches. First a defendant may demonstrate 'actual vindictiveness,' *i.e.*, he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights. Second, a defendant may establish that, in the particular factual situation presented, there existed a realistic likelihood of vindictiveness for the prosecutor's action. A court may only presume an improper vindictive motive when a reasonable likelihood of vindictiveness exists. The petitioner must establish that (1) the prosecutor has some stake in deterring the petitioner's exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable.

A defendant must first show that "the allegedly vindictive government action occurred following the exercise of a protected right" which is "a threshold matter." *United States v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008). Challenging the sufficiency of the indictment through a motion to dismiss is a protected right. *Id.* However, merely refusing to plead guilty and deciding to go to trial is not, at least not in the context of a vindictive prosecution motion. *Suarez,* 263 F.3d at 379 ("Although the right to a trial by a jury of one's peers is a highly protected right, asserting this right by rejecting a plea bargain is not enough to provide evidence of an improper motive on the part of the prosecution").

In addition to showing that she exercised a protected right, a defendant "must also demonstrate that the government had a 'stake' in deterring the exercise of her protected right." *Moon,* 513 F.3d at 535 (citing *United States v. Anderson*, 923 F.2d 450, 453-54 (6th Cir. 1991)). And "the fact that the government had to return for a superseding indictment does not constitute a sufficient stake in deterring Defendant's exercise of a protected right." *Id.;* s*ee also*, *United States v. Goodwin*, 457 U.S. 368, 381 (1982) ("[A] defendant before trial is expected to invoke procedural rights that inevitably impose some burden on the prosecutor. Defense counsel routinely file pretrial motions to . . . challenge the sufficiency and form of the indictment . . . It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter."); *United States v. Branham*, 97 F.3d 835, 850 (6th Cir. 1996) (same, citing *Goodwin,* and noting that, "[i]n addition, at the pretrial stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized") (internal quotation marks omitted).

---

*Id.* (citations and internal quotation marks omitted). It is submitted, however, that this approach essentially discusses the same principles in somewhat different order. For the reasons set forth herein, the result under either approach is the same.

What also does not constitute such as stake as a matter of law is a defendant's exercise of her right to trial, rather than making a plea bargain with the government. In *Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978), the Supreme Court held that Due Process is not violated when a prosecutor brings more serious charges following a defendant's refusal to plead guilty to the offenses with which she is originally charged. Accordingly, "[a]voidance of trial as a prosecutorial stake is implicit in the plea bargaining process, and therefore exempt under *Bordenkircher* from being held vindictive." *Young,* 847 F.3d at 362 (quoting *Suarez,* 263 F.3d at 480); s*ee also*, *Suarez,* 263 F.3d at 379 ("However, if the charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive")

Here, the defendant argues that the complaint and indictment in this case were filed in retaliation for two events in *Robinson I*:  1) her refusal to enter a guilty plea and assertion of her right to trial; and, 2) her filing of a motion to dismiss the indictment, which resulted in the government's obtaining a superseding indictment. For the following reasons, however, these two grounds are insufficient as a matter of law to establish vindictive prosecution without regard to any other facts; and even if the Court can consider the specific factual considerations argued by the defendant, they do not establish that the prosecution in this case was vindictive.

### B.  Defendant's Exercise of a Protected Right.

The defendant's filing of the motion to dismiss in *Robinson 1* was the exercise of a protected right sufficient to establish the threshold prong of the Sixth Circuit's test. *Moon,* 513 F.3d at 535. However, her refusal to enter a guilty plea was not. Contrary to the defendant's suggestion, *Bordenkircher* and the Sixth Circuit cases interpreting it such as *Suarez* and *Young* are not fact-bound determinations. They establish a bright line rule that additional charges brought as a result of a defendant's determination to exercise her right to trial are not vindictive. The language

in *Young*, for example, that such claims are "exempt under *Bordenkircher* from being held vindictive" (*Young*, 847 F.3d at 362) could hardly be more clear. [6]

### C. Prosecutorial Stake in the Exercise of a Protected Right

It is here that the defendant's argument fails completely as a matter of law because it is well-established that neither of the grounds alleged by the defendant can constitute a sufficient prosecutorial stake to support a vindictive prosecution motion.

---

[6]Here it must be pointed out that the defendant's factual assertions as to the state of plea negotiations with the government are internally inconsistent and contradictory.

She begins by asserting that "the parties were never in negotiations for a settlement." (RE-67 at p.3, PagID 131). Then, however, she avers that, "the government's attorney stated that Ms. Robinson and her counsel should have known these charges were coming based on a discussion the [g]overnment had with Ms. Robinson's prior counsel that if Ms. Robinson did not plead guilty, then the government would file the additional charge." *Id.* at p.5, PageID 133. Based on that, she later argues that the government had a stake in preventing her from asserting her right to trial because "[t]he [g]overnment attorney admitted as much when he said he brought these charges because Ms. Robinson did not plead guilty in *Robinson 1*." *Id.* at p.12, PageID 140. However, she then asserts that "there has been no 'failure of the plea bargaining process' in this matter. The [g]overnment has never approached Ms. Robinson's current counsel with any plea negotiation nor the threat of additional charges." *Id.* at p.10, PageID 138.

It is therefore difficult to ascertain whether the defendant is asking the Court to find that the current charges are the result of failed plea negotiations or none at all. Ultimately, it is a factual question that is unnecessary to resolve because the defendant's assertion of her right to trial cannot form the basis for a vindictive prosecution motion in either event.

However, for the purpose of making a complete factual record, the government did have plea discussions with the defendant's previous counsel. In July 2020, the government met with the defendant's previous counsel Edward Stanton for the purpose of attempting to negotiate a plea to an information prior to indictment. During that meeting, the investigation which led to *Robinson 2* was discussed in general terms and the charges from that investigation were mentioned as a possibility, in addition to the charges in *Robinson 1*, if an agreement could not be reached. Ultimately, the parties could not reach an agreement and the complaint in *Robinson 1* was filed on July 24, 2020.

First, with regard to her decision to go to trial, once again, under *Bordenkircher*, this can never form the basis for a vindictive prosecution claim.

Regarding her motion to dismiss, the defendant raises the identical claim that the Sixth Circuit considered and rejected in *Moon*. In that case, "[d]efendant's argument rest[ed] on the prosecutor's stake in deterring the exercise of the procedural right to put forth a motion to dismiss inasmuch as the prosecutor had to return to the grand jury on two occasions." *Moon*, 513 F.3d at 535. "However," the Court found, "the fact that the government had to return for a superseding indictment does not constitute a sufficient stake in deterring Defendant's exercise of a protected right." *Id. Moon*, then, forecloses the defendant's ability to rely on her motion to dismiss to establish a sufficient prosecutorial stake to support her vindictive prosecution claim.

The defendant, however, insists that the particular facts of this case make her claim different. She argues that by obtaining the superseding indictment in *Robinson 1*, the government essentially "dismissed" most of the 48 counts in the first indictment, thus, she surmises, purportedly undermining public confidence in the prosecution.

Even if the Court considers this line of argument on the merits, it makes logical sense only to someone with no idea about how federal charging and sentencing works. For under the U.S. Sentencing Guidelines, the sentencing ranges for theft and fraud cases such as *Robinson 1* are established by "relevant conduct" based on the amount of loss, without any regard to the number of indictment counts. *See* U.S.S.G. § 2B1.1 (establishing offense levels based on amount of loss). And as evidenced by the specific financial transactions alleged in each indictment, the superseding indictment in *Robinson 1* did not lose any of the relevant conduct from the first indictment; it was simply reconfigured into a smaller number of counts, a change which makes no difference in the defendant's potential sentencing range.

Moreover, anyone, regardless of their familiarity with federal charging and sentencing, may look at the two indictments side by side and see that none of the financial transactions from the first indictment were "dismissed" from the superseding indictment. The government simply lost nothing of substance in being obliged to make a second trip to the grand jury.

If anything, the new indictment actually makes the case easier to try from the government's standpoint because there are fewer counts to prove and it is substantially easier to establish the $5,000 jurisdictional threshold in each of the counts that remain.[7] So to that end, far from being vexed by the necessity of the new indictment, the government actually regards it as a welcome development that will allow the case to be tried more efficiently. *See United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2008) (no vindictive prosecution in superseding indictment following mistrial, which gave the government "the opportunity to reassess its manner of presenting evidence. Thus, it seems not only that the prosecution welcomed the new trial, it also realized that there was a better way to conduct it. It is difficult to see how this would prompt a prosecutor to act vindictively towards a defendant").

**D. Reasonableness of Prosecutor's Conduct**

Even if the defendant were allowed to assert her two purported grounds as prosecutorial stakes, the government's conduct of both prosecutions was reasonable. Once the government realized, in December of 2020, that it was going to be necessary to alter the way the § 666 counts were grouped, the seeking of an immediate superseding indictment was only logical next step. The earliest charged conduct in *Robinson 1* dates back to 2015 (*see* RE-64, Case No. 20-20148, Superseding Indictment); and if the government had waited for the Court to rule on the motion to

---

[7] Title 18 U.S.C. § 666(a)(1)(A)(i) stipulates that any charge under that section must involve property that "is valued at $5,000 or more".

dismiss, it likely would have lost this conduct to the statute of limitations in a subsequent indictment.

Meanwhile, the investigation of *Robinson 2* was complete around this same time period. With a return to the grand jury in *Robinson 1* already a necessity, it was an opportune time to present both cases simultaneously, which was the original intent. However, that changed on December 30, 2020 when the Court entered an administrative order once again restricting grand jury practice in a manner that did not allow for the immediate charging of *Robinson 2* by indictment. Thus, the case was charged by complaint not for public relations reasons, as the defendant argues, but because it was the only way it could be charged under the rules in effect at the time.

Charging the two cases at the same time also permitted the government to minimize the number of arrests and court appearances necessary to bring all the defendants before the Court. In order for this to be done in both the safest and most efficient manner possible – and, contrary to the defendant's contentions, to minimize any public spectacle surrounding the arrests. Not only was the government under no obligation to notify the defendant of the new charges in advance, it was constrained from doing so by the sealing orders then in effect.

Finally, the defendant's claim that the government has prosecuted this case in such as way as to maximize press coverage in a prejudicial manner is without any factual foundation. While it is true that the prosecution of the defendant has generated a fairly substantial amount of media coverage, that is a natural byproduct of any case involving a sitting state senator. When the Court examines the defendant's recounting of that coverage in the instant motion, what is missing are any indicia that the government took *any* unilateral action to unduly exacerbate and prolong it.

For example, at no time has anyone from the U.S. Attorney's Office held a live press conference on these cases (the defendant is the only party to have done that), or made a media appearance in connection with them, or even spoken for attribution in any media article about them beyond short quotes in written press releases. Indeed, as the defendant's own motion indicates, those two press releases, one at the time each case was first charged, have been the only direct communication between the government and the media concerning the prosecution of the defendant. Given the legitimate public interest in charges against an elected official, particularly when the alleged crimes involve dishonesty, those communications were reasonable and in no way excessive.

In sum, the government acted reasonably at all times during the progress of this case, and its conduct in no way supports a claim of vindictive prosecution.

### E. Intent to Punish

In examining this element, "the likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the prosecution. *United States v. LaDeau*, 734 F.3d 561, 569 (6th Cir. 2013).

In this case, the defendant's motion to dismiss merely uncovered a technical defect in the indictment that was easily correctable by a superseding indictment. As noted above, the result was an indictment that did not lose any of the charged conduct from the original, and, from the government's standpoint, is actually easier and more preferable to try.

This case is thus readily distinguishable from *LaDeau*, in which the Sixth Circuit upheld the district court's finding of vindictiveness in the government's bringing a superseding indictment with enhanced penalties, and upon which the defendant heavily relies. In *LaDeau*, the defendant successfully litigated a motion to suppress that placed a "significant" burden on the government:

13

"It did not inflict merely 'some' incidental burden on the government's ability to prove its case; it inflicted a mortal blow." *Id.* at 568-69. Thus, the Sixth Circuit concluded, "LaDeau's exercise of his suppression rights is not fairly comparable to the minimally aggravating pretrial filings contemplated in *Goodwin*." *Id.* at 569. It therefore found no abuse of discretion in the district court's finding of vindictiveness in the government's obtaining a superseding indictment after the successful motion. *Id.* at 573.

Here, in addition to the negligible effect the defendant's motion to dismiss had on the government's overall case in *Robinson I*, it should be noted that the addition of the new charges in *Robinson 2* will likely have little effect on the overall penalties the defendant will face even if she is convicted in both cases.

Taken together, the addition of the new charges in this case would not change the defendant's offense level from *Robinson I*. *See* U.S.S.G. § 2B1.1(b)(1) (indexing offense levels based on amount of loss).[8] Taken individually, *Robinson 2* has a likely guideline sentencing range of 4-10 months, which would decrease to 0-6 months if she received credit for acceptance of responsibility.[9]

It is thus objectively unreasonable to conclude that the government brought a second case – and with it, a second trial with two additional defendants – out of an intent to punish the defendant for bringing a minimally burdensome motion to dismiss. The burden the government placed on

---

[8] The amount of loss in *Robinson 1* is approximately $600,000. The amount of loss in *Robinson 2* is approximately $14,470. U.S.S.G. § 2B1.1(b)(1)(H) provides for an increase in offense level of 14 points for losses over $500,000. Increasing the offense level further than that would require losses in excess of $1.5 million. *See* U.S.S.G. § 2B1.1(b)(1)(I).

[9] Based on a Base Offense Level of 7 (U.S.S.G. § 2B1.1(a)(1)), an increase of 2 points based on an amount of loss of less than $15,000 (§ 2B1.1(b)(2)(C)), and a Criminal History Category of I.

itself in bringing that case far outweighs the relatively minor inconvenience of the supposedly triggering motion.

### F. Actual Vindictiveness

The defendant also alleges that the government acted with actual vindictiveness in bringing the charges in this case. To the extent that that claim is not already subsumed in the discussion thus far, it is addressed here.

In order to establish actual vindictiveness, "a defendant must show objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights . . ." *Young* at 361 (quoting *United States v. Zolicoffer*, 570 F. App'x 540, 543 (6th Cir. 2014)).

Here, however, the defendant's argument about actual vindictiveness focuses entirely on her assertion of her right to trial, which, as already discussed in detail, can never form the basis for a vindictive prosecution motion. She mentions her motion to dismiss, her only arguably viable basis for this motion, merely in a footnote. (*See*, RE-67, p.11 n.12, PageID 139).

Moreover, the defendant's attempts to shoehorn *LaDeau* into her argument on actual vindictiveness does not allow her to claim what *Bordenkircher* forecloses. In *LaDeau*, the Sixth Circuit noted that "the increased charge here did not stem from the plea bargaining process. Instead, the government unilaterally imposed the more severe charge without engaging LaDeau in any of the give-and-take compromise through which LeDeau could negotiate a concession or benefit." *LaDeau,* 734 F.3d at 569. The defendant argues that the government was actually vindictive because "the [g]overnment's attorney admitted that the [g]overnment brought these charges because Ms. Robinson would not plead guilty in *Robinson 1"* (RE-67, p.9, PageID 137); and asserts that this case is like *LaDeau* because it did so without first engaging her in plea discussions.

15

However, the Court in *LaDeau* first acknowledged the holding in *Bordenkircher* that a defendant's exercise of the right to trial could not alone form the basis of a vindictive prosecution claim. *LaDeau,* 734 F.3d at 569. Its discussion of the lack of plea negotiations before the government obtained its superseding indictment with increased charges was not to hold that such could support a vindictive prosecution claim in itself, but rather to support the conclusion that the actual reason for those charges was the successful motion to suppress. *Id.* at 569-70.

Thus, the defendant has failed to establish actual vindictiveness, and her claim in that regard cannot stand.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that defendant's motion be denied.

                                                Respectfully submitted,

                                                JOSEPH C. MURHPY, JR.
                                                United States Attorney

                    By:   /s Christopher E. Cotten
                          CHRISTOPHER E. COTTEN
                          Assistant United States Attorney
                          800 Federal Bldg., 167 N. Main
                          Memphis, Tennessee 38103
                          (901) 544-4231
                          chris.cotten@usdoj.gov

## CERTIFICATE OF SERVICE

I, Christopher E. Cotten, Assistant United States Attorney for the Western District of Tennessee, do hereby certify that a copy of the foregoing motion has been delivered via the Court's electronic filing system, to the attorneys for the defendants.

This 19th day of May, 2021.

/s Christopher E. Cotten
CHRISTOPHER E. COTTEN
Assistant United States Attorney